## Holmes *v.* Neafie & Levy, Appellant.

*Broker—Commissions.*

Where a broker has brought the parties together, and the meeting has resulted in a contract, he is entitled to his commissions, although the contractor is required to enter into competition with other bidders before the contract is awarded to him.

Argued April 1, 1892. Appeal, No. 192, Jan. T., 1892, by defendants, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1889, No. 319, on verdict for plaintiff, Samuel Holmes. Before STERRETT, GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Assumpsit to recover commissions for negotiating a contract for the building by defendants of a steamship for the Puget Sound & Alaska Steamship Co.

At the trial, before PENNYPACKER, J., the evidence was to the following effect: On October 3, 1889, plaintiff sent to defendants the following telegram: "Can you call Lafayette Hotel before eight o'clock to-night? Am coming over with purchaser 'City of Kingston,' representing Northern Pacific interest, to look at 'Charlotte.' If we cannot trade satisfactorily with owners you can get a new contract. If we can trade you can of course contract to duplicate. Better meet us at hotel and make Jackson's acquaintance. In making him price cover usual brokerage five per cent." Defendants replied that Mr. Levy would meet plaintiff, and on the evening of Oct. 3, 1889, they met, and he was introduced by plaintiff to Captain Jackson. Plaintiff testified that he introduced Jackson to Levy as the manager of the Puget Sound & Alaska Steamship Co., who was in the market to buy two steamers and to build two steamers, and that they had come over to

see the steamship " Charlotte," which the defendants were then building for other parties, as one of the vessels which, from general description, seemed suitable for his requirement. Plaintiff introduced evidence which tended to show that negotiations were then commenced for the making of a contract for the building by defendants for said company of a new steam vessel; and that these negotiations, in which plaintiff took part, had terminated, on Nov. 27, 1889, in a contract between defendants and said Puget Sound & Alaska Steamship Co. for the construction of a steam vessel for the price of $158,000. He also averred that his services had been used in negotiations for the contract without any intimation on the part of defendants that they did not expect to pay his commissions, and that five per centum was the usual commission charged by brokers in such case.

Defendants introduced evidence which tended to show that the negotiations with plaintiff related only to the ship " Charlotte," and that the contract which they finally made with the Puget Sound & Alaska Steamship Co. was made only as the result of a competitive examination in which they were the lowest and best bidders.

Defendants' points were, among others, as follows :

" 3. If you find from the evidence that the contract in question was awarded to the defendants by the Puget Sound & Alaska Steamship Co. after competition and bids made by the defendants and other shipbuilding firms, and that the contract was awarded to the defendants because they were the lowest and best bidders in price or time for construction, your verdict must be for the defendants." Refused. [6]

" 4. If you find from the evidence that the contract was awarded to the defendants because they became competitive bidders with others, and obtained the contract because they were the lowest and best bidders in price and time without the intervention, influence or effort of the plaintiff, your verdict must be for the defendants. *Answer :* I affirm that point if it was not the result of the efforts of the plaintiff." [7]

" 5. There is no evidence that the plaintiff, after the attempt to purchase the ' Charlotte ' had failed, had anything to do with the awarding of the contract for the building of the steamer ' City of Seattle ' by the defendants for the Puget

Sound & Alaska Steamship Co., and your verdict must be for the defendants." Refused. [8]

"6. The evidence is uncontradicted that the contract in question was awarded to the defendants as the result of their competition with other builders, and by and with the advice of George B. Mallory, the consulting engineer of the Puget Sound & Alaska Steamship Co., who was called in by Mr. Oakes, trustee, and with neither of them does the plaintiff prove that he had any communication or interview whatever for the purpose of inducing them to award the contract to the defendants, and therefore your verdict must be for the defendants." Refused. [9]

"9. If you believe from the evidence that when the plaintiff introduced Captain Jackson to Mr. Levy, one of the defendants, in Philadelphia, on the 3d of October, 1889, that this introduction, as Captain Jackson and Mr. Levy say, related only to the purchase of the 'Charlotte,' and that at that time Captain Jackson had not determined to build a new boat and on that occasion did not discuss the subject; this introduction cannot be claimed by the plaintiff as an employment by the defendants or as the beginning of the negotiations to procure a contract to build the vessel in question." Refused. [10]

"10. The plaintiff does not assert or claim that his efforts to obtain the contract upon which he claims his commissions were made with any one connected with the steamship company, Mr. Oakes, trustee, except Captain Jackson. The uncontradicted evidence is that Captain Jackson had no power to award the contract to build, and that, as testified by Mr. Jackson, Mr. Oakes and Mr. Mallory, when the competitive bids were opened it was found that the defendants' bid and that of Mr. Marvel were nearly alike, and that Mr. Oakes alone had the power to award the contract and that he gave it to Neafie & Levy, the defendants, because they offered to build and deliver the vessel at an earlier date, and by advice of Mr. Mallory, whom Oakes had employed as constructing engineer. With this award of the contract the plaintiff had nothing whatever to do; the plaintiff is, therefore, not entitled to recover any portion of his commissions, and your verdict must be for the defendants." Refused. [11]

"14. Under all the evidence I instruct you that the plain-

tiff is not entitled to recover, and your verdict must be for the defendants." Refused. [12]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* were, among others, (6–12) instruction, quoting them as above.

*J. Warren Coulston, Alfred Drinker* with him, for appellants.—A broker must find a purchaser ready and willing to complete the purchase on the terms agreed upon before he is entitled to his commissions: Earp v. Cummins, 54 Pa. 397; Keys v. Johnson, 68 Pa. 43; Clendenon v. Pancoast, 75 Pa. 213; Pratt v. Patterson's Executors, 112 Pa. 479; Peirce v. Truitt, 21 W. N. 569; Masterson v. Masterson, 121 Pa. 609, 610; McGavock v. Woodlief, 20 Howard, 227; Sibbald v. Bethlehem Iron Co., 83 N. Y. Court of Appeals, 382.

*John G. Johnson,* for appellee.—It is enough if the broker brings the parties together and the result of their meeting is that a contract is made: Keys v. Johnson, 68 Pa. 43; Reed v. Reed, 82 Pa. 420; Bayley v. Chadwick, 39 L. T. N. S. 429; Wilkinson v. Alston, 48 L. J., Q. B. Div., 37, 733.

PER CURIAM, October 3, 1892.

We are not convinced that there is anything in either of the specifications of error that requires a reversal of the judgment entered on the verdict in favor of plaintiff. His right to recover depended upon questions of fact which were necessarily for the consideration and determination of the jury. Those questions appear to have been fairly submitted to them under adequate and proper instructions, and the facts, entitling plaintiff to a verdict, must have been found in his favor. Defendants' points for charge, recited in the 6th to 12th specifications, inclusive, were rightly refused. Neither of the assignments of error is sustained.

Judgment affirmed.