## JACOB A. HENRY

*v.*

## BENJAMIN F. STEWART.

*Opinion filed April 17, 1900.*

1. BROKERS—*broker entitled to commission though purchaser acts for third parties.* One employed to find a purchaser for property, who introduces to his principal a party to whom a sale is made, is entitled to his commission, whether the purchaser is buying for himself or for third parties.

2. APPEALS AND ERRORS—*what questions are settled by Appellate Court's affirmance of judgment for commissions.* A judgment of the Appellate Court affirming a judgment for commission on the sale of property settles the questions of fact that the plaintiff was employed by the defendant, that he was the efficient means of making the sale and earned his commission.

3. SAME—*one cannot complain of his own instructions.* That instructions given for the appellant do not harmonize with a correct instruction for the opposite party is not ground for reversal.

4. TRIAL—*when instruction to find for defendant must be refused.* An instruction to find for the defendant must be refused, where the evidence, if credited by the jury, is sufficient to sustain a verdict for the plaintiff.

*Henry* v. *Stewart,* 85 Ill. App. 170, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ROBERT W. HILSCHER, Judge, presiding.

GEORGE S. HOUSE, (EGBERT PHELPS, of counsel,) for appellant.

D. A. HOLMES, and E. MEERS, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee secured a judgment for $8850 and costs against appellant in the circuit court of Will county for commissions on the sale of the capital stock and property of the Joliet Street Railway Company. The property

was sold for $262,500, upon which appellee claimed a commission of five per cent. A part of the consideration was paid by assuming a bonded debt and special assessment, and $2500 was paid by the purchaser to buy in fifty shares of stock not owned by appellant. The jury seem to have deducted these sums, amounting to $85,500, leaving a balance of $177,000 as the actual selling price of the property, and to have allowed five per cent upon that sum. The Appellate Court has affirmed the judgment.

The capital stock of the street railway company was $300,000, divided into 3000 shares, of which the appellant owned 2900. Plaintiff was in the employ of the Westinghouse Electric Manufacturing Company, in the street railway department, and furnished motors and other things for this street railway. He testified that he was employed by the defendant to sell the property, under an agreement that if he would bring defendant a customer he would pay him five per cent on the sale. Defendant admitted that the matter of selling the road was brought up between him and the plaintiff and that he talked with plaintiff several times about selling it, but denied that he ever employed him or agreed to pay him any commission. Defendant had an abstract of his books prepared, showing his receipts and disbursements from 1891, and furnished it to plaintiff, together with an inventory of the property. Plaintiff prepared a prospectus and wrote to parties in the east, and made journeys there to induce men of capital to come and look at the property. He was unable to sell the property, and the matter ran along, with occasional interviews with the defendant, until 1896, when the defendant became very anxious to dispose of the railway. Plaintiff made renewed efforts for a sale and called the attention of William B. McKinley to the property and induced him to go to Joliet, where plaintiff introduced him to defendant, and negotiations were commenced which ended in the sale of the property. About June 10, 1896, defendant gave McKinley an option for the

sale of $275,000 of the stock, the defendant to retain the balance. McKinley went to Portland, Maine, to present the matter to a syndicate there, and telegraphed the defendant from Portland that the option was accepted. It turned out, however, that the syndicate would not take the stock unless they could get all of it. They wanted to re-organize the company and consequently wanted all the stock, although they were willing defendant should have stock in the new organization. McKinley came back to Joliet, and with him came an attorney representing the syndicate. The $10,000 of stock not owned by defendant belonged to his son-in-law, Folk, and others, and the buyers insisted upon having that stock surrendered. Defendant could obtain the stock but refused to do so. An arrangement was finally made, by which, as McKinley testified, Folk took $5000 in bonds in the re-organized company and $500 in money for his stock. McKinley and the defendant each paid $2500 for the other $5000 of stock. In that way the stock was all secured and deposited with the Will County National Bank, and a contract was made between defendant and Henry P. Cox, acting by said attorney, for the sale of the property, and a transfer to such person or persons as Cox might designate. Cox was a member and representative of the syndicate. The property was paid for according to the agreement and a conveyance was made to McKinley. The corporation was re-organized with a capital stock of $300,000, and all the stock was subscribed for by McKinley, except seven shares held by other persons, each holding one share. Defendant denied the employment of plaintiff and testified that he supposed McKinley represented Mr. Cox, with whom the contract was made. The defense is stated by his counsel as follows: "Appellant's defense is, that Henry P. Cox, the purchaser, was presented by McKinley, and that McKinley negotiated the sale between appellant and Cox on his own account, independently, and not as the agent of appellee." Consid-

ered as a question of fact, the judgment of the Appellate
Court is, of course, final, and it must be regarded as set-
tled that defendant employed plaintiff to negotiate the
sale, that plaintiff did so and was the active and efficient
cause of such sale, and that he earned his commission.

At the trial Folk was a witness, and defendant asked
him if he received any of the bonds of the new company,
and he said he did. A further question as to whether
they were bonds of the Joliet Railway Company was ob-
jected to and the objection was sustained. Defendant's
counsel said he wanted to show by the answer that Mc-
Kinley and Folk made the sale of the road and got their
pay for it. Defendant testified that he understood Mc-
Kinley represented Cox, the purchaser. He did not claim
to have had any bargain with McKinley or Folk to sell
the road for him, but he treated with McKinley as a pur-
chaser. On his own testimony it was immaterial whether
Folk got bonds of the company for services, and the ques-
tion did not call for any information on the fact which
counsel says he wanted to prove. There was no attempt
to prove the employment of either McKinley or Folk by
defendant, and no question was asked which would elicit
information on that subject.

The defendant was examined and testified that he
received $50,000 of stock in the new company, and that
McKinley called for $15,000 of it and sent his man over
to get it, and further said: "I don't know what he wanted
with that. I suppose commissions." On objection, the
court struck out the statement. The answer was nothing
but a supposition of the witness, and not a fact. The wit-
ness said he did not know what McKinley wanted with
the stock, and it was properly stricken out. It would
make no difference if the defendant gave up some part of
the purchase money to McKinley, or upon what terms he
made the sale to him, except as a basis for determining
the commission. McKinley testified that he did not act
as a broker and had not retained $15,000 of the purchase

money, and had not retained anything as commission. There was no evidence tending to show that McKinley was the agent who made the sale or that the plaintiff did not make it.

At the close of all the evidence defendant presented an instruction directing a verdict in his favor, and the court refused it. The facts necessary to establish plaintiff's claim were testified to by him and by McKinley and corroborated by other evidence, and if such evidence was credited by the jury it was sufficient to justify a verdict. It was therefore proper to refuse the instruction and submit the issues to the jury.

Defendant asked the court to give to the jury the following instruction:

"If the jury shall believe, from all the evidence, that on or about the 24th day of June, A. D. 1896, the defendant in this cause, as party of the first part, contracted and agreed with one Henry P. Cox, of Portland, Maine, for the sale and transfer of the entire capital stock of the Joliet Street Railway Company, together with the possession, management and control of the property and franchises of said corporation, and that thereafter such contract was consummated by an execution thereof on the part of said defendant, then the plaintiff in this case cannot recover and the jury will so find."

There was no dispute that a contract was made with defendant by Henry P. Cox and that the contract was consummated, and the instruction stated these undisputed facts but ignored every fact which affected the rights of the parties to the suit. Although the contract was made with Cox and was carried out, yet if it was made under an agreement with plaintiff, and through his instrumentality, he was entitled to recover. The court was right in refusing the instruction.

It is complained that the court gave this instruction:

"The court instructs the jury that if you believe, from the evidence in this case, that the defendant employed

the plaintiff, Stewart, as his agent, to negotiate the sale of his, the defendant's, street railway property, and that the plaintiff undertook said employment and was instrumental in bringing together the buyer and the defendant, then and in that case the plaintiff is entitled, as a matter of law, to recover from the defendant compensation for his services, regardless of the fact that the defendant himself concluded the sale, and upon a price less and upon terms different from those at which the plaintiff was authorized to sell."

The instruction stated the law. (*Hafner* v. *Herron*, 165 Ill. 242.) It seems to be insisted by counsel that unless McKinley was the agent of the plaintiff in negotiating the sale the plaintiff could not recover. That is not so. If plaintiff, as agent for the defendant, offered the property to McKinley and thereby brought about a sale, it is wholly immaterial whether McKinley acted for himself, or for himself in connection with others, or for a syndicate. Whether he was himself the purchaser or an agent of the real purchaser was a matter of no concern to the defendant. The proof was undisputed that plaintiff introduced McKinley to the defendant and that the sale resulted from such act of the plaintiff. He found a buyer whom defendant was willing to accept, and did accept, whether such buyer was acting for himself or others.

The court gave two instructions at the instance of the defendant which were very favorable to such defendant, and which counsel says cannot be harmonized with the one above quoted, given for the plaintiff. The defendant could not object to those given at his instance, and if he is not able to harmonize them with the correct instruction given for the plaintiff it is not ground for reversal.

The defendant made a motion for a new trial on the ground of newly discovered evidence, supported by affidavits of himself and Folk. The evidence set forth was cumulative and not conclusive, and would not be ground for new trial. The affidavits amounted to but little more

than statements that the memory of the parties making them was better after the trial than at the trial. The motion was properly overruled.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*