## Arthur B. Wright v. James McClintock.

### Gen. No. 4,801.

1. COMMISSIONS—*when broker entitled to recover.* Where an agent employed to sell property induces a party to go to his principal and a sale is effected to such party through his efforts or information derived from him, the agent is entitled to a commission, although he does not personally introduce the purchaser to his principal. Where an agent is employed to sell real estate for the owner or undertakes the employment and is instrumental in bringing the owner and the buyer together, and the owner then concludes the sale at a less price than the agent was authorized to sell, the agent is entitled to compensation for his services.

2. INSTRUCTIONS—*when errors in, will not reverse.* Erroneous rulings upon instructions will not reverse where the judgment is clearly right.

Wright v. McClintock.

Assumpsit. Appeal from the County Court of DuPage County; the Hon. M. O. Southworth, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907. Rehearing denied October 4, 1907.

**Statement by the Court.** Mrs. Hattie P. Bush owned lot six in block five in Stough's first addition to the original town of Hinsdale, Illinois. It had a frontage of 165 feet. She had occupied it as a homestead for many years. James McClintock was a real estate agent at Hinsdale. Mrs. Bush had had the property in his hands for sale for several years at $30 per front foot. Her husband died and she removed to Chicago. She was some seventy years of age. Her son, Joseph P. Bush, lived with her and assisted her in her property affairs. McClintock was finally authorized to sell the property at $25 per front foot. Arthur B. Wright was a lawyer having an office in Chicago. He desired to purchase a home. Gardner, a friend of his at Hinsdale, called his attention to the Bush property and to McClintock. Wright visited the Bush property, then in possession of a tenant. He afterwards went to McClintock and had a conversation about the property. There is a sharp controversy between McClintock and Wright as to what was said in that conversation. Wright denies that he was informed that McClintock was agent for the property. McClintock testified that in that conversation Wright said that Gardner told him that very likely McClintock had the property for sale. He also testified that in that conversation he told Wright that he was the agent for Mrs. Bush for the sale of the property, and offered it to him at $25 per foot. The letter of July 20, 1905, from Wright to McClintock implies that he understood that McClintock was seeking to sell him the property. The state of the evidence therefore was such that the jury were warranted in finding that Wright knew when he went to McClintock that the latter was the agent of Mrs. Bush for the sale of the property. Under date of July 20, 1905, Wright wrote McClintock a letter, the body of which was as follows: "I have made a careful inquiry and investigation and my views of value differ so widely from your own that I doubt if we

can ever get together. Land is worth what you can get for it, and a holding price means nothing except if it be too high it frightens off a purchaser, as it likely has done in my case. I rather fancy the old home property except that the house is an encumbrance. I think $20 not $25 a fair holding price and that it would take $18 to move a sale. This is an impersonal view founded on my experience in such cases and I would advise a client to sell at $18. The other pieces on the north side do not strike my fancy. There are some south side pieces that I can get at $18 and are more marketable than north side pieces. It amounts to this, that I wish you would see this lady or her son or send him to see me, but it must be handled right so that $18 is absolutely the final price, or we don't want to waste any time over it. If any sale is made I shall protect your fee. I am in the business myself and know what that means." On July 21st McClintock wrote Wright as follows: "Your letter rec'd. Would say in reply that I do not think there is any possibility of your propositions being accepted. I have, however, referred your letter to the owner, who will take the matter up at once, and you will hear from me at the earliest possible moment." McClintock sent Wright's letter to Joseph P. Bush and he read it to his mother and returned it to McClintock with a statement that they would take either $22.50 or $23 per foot, and which sum was named the evidence leaves uncertain. On July 24th McClintock wrote Wright as follows: "Your letter of the 20th in regard to lot 165 by 165 with old house on Lincoln street, north side, was submitted to owner. I am in receipt of letter from him this p. m. in which he says they will take $23 per foot for the tract and that must be low figure. This is $3,795 for the property, and I must say to you that it is as cheap as you will ever buy any piece of land. He says they can give possession October 1, 1905. I shall be glad to hear from you and hope you will decide to buy this piece." To this Wright replied on July 25th to the effect that he would not pay over $18. Wright then went to the home of Mrs. Bush in Chicago. She refused to deal with him in the absence of her son. Wright had two later inter-

views with her in the presence of her son in her home and had one or more interviews with her son at his office.   Mrs. Bush sold the premises to him for $18 per foot, upon his assurance to her and to her son that there would be no commissions to pay to any one and that neither McClintock nor another agent by the name of Fish at Hinsdale would have any claim for commission.   To make this more emphatic Wright caused his wife, to whom he had the property conveyed, to enter into a written contract with Mrs. Bush to save and keep her harmless from any claim for commissions on account of said sale on the part of any person.   This assurance by Wright that there would be no commissions to pay entered into the agreement by Mrs. Bush to accept $18 per foot.   The proof shows without contradiction that on sales of this amount the reasonable and customary commissions are five per cent, which would amount to $148.50.   This is a suit by McClintock against Wright to recover his commissions on said sale.   He had a verdict for $148.50, but in a bill which he had rendered Mrs. Bush for these services and in his affidavit filed with the declaration he claimed only $100.   He therefore remitted $48.50 from the verdict and had a judgment for $100, from which Wright prosecutes this appeal.

Appellant contends (1) that appellee has not earned any commission from any one because of this sale; (2) that the agreement by appellant, in said letter of July 20th, is against public policy; and (3) that if the appellee has earned commissions, and if said agreement is not against public policy, still it cannot be recovered in this action under the pleadings.

FURBER & MAKELEE, for appellant.

FISCHER & FISCHER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Where an agent employed to sell property induces a party to go to his principal and a sale is effected to such party

through his efforts or information derived from him, the agent is entitled to a commission, although he does not personally introduce the purchaser to his principal. Where an agent is employed to sell real estate for the owner or undertakes the employment and is instrumental in bringing the owner and the buyer together, and the owner then concludes the sale at a less price than the agent was authorized to sell, the agent is entitled to compensation for his services. Wilson v. Mason, 158 Ill., 304; Hafner v. Herron, 165 Ill., 242; Henry v. Stewart, 185 Ill., 448; Rigdon v. More, 226 Ill., 382. According to the evidence, appellee had for a long time faithfully endeavored to sell this property for Mrs. Bush at the price of $30 per foot fixed by her. She then reduced the price to $25 per foot, and he made still further efforts to sell it. He obtained from appellant a written offer of $18 per foot and sent it to Mrs. Bush. The parties then came together and Mrs. Bush sold the property to appellant at the offered price which appellee had communicated to her. In our judgment it does not deprive appellee of his right to compensation that he did not originally discover appellant, but Gardner sent appellant to his office, nor that appellee did not go with appellant to Mrs. Bush's home and personally introduce him to her, under the circumstances in proof here. Appellee obtained an offer, transmitted it to Mrs. Bush, and she finally accepted it. He had earned his commission from Mrs. Bush. In appellant's letter to appellee of July 20th, in which he made the written offer of $18 he said "If any sale is made, I shall protect your fee. I am in the business myself and know what that means." Just preceding this statement he had requested appellee to send the owner or her son to him, and this clause in the letter was meant to assure the agent that he need have no fears of losing his right to compensation if the parties came together and dealt personally with each other. The passage just quoted meant that if appellant had a personal interview and succeeded in buying the property, he would either pay appellee's compensation or he would see to it that it was paid out of the purchase money. He did buy the property, he did not pay the commission and he did not

provide for its payment out of the purchase money, but on the contrary he assured Mrs. Bush and her son that appellee had done nothing towards bringing about the sale and that she would not owe appellee any commission. We are of opinion that under these facts appellant was liable to appellee upon the promise contained in said letter.

Appellant argues that this was an attempt by him to induce appellee, an agent, to serve the interests of appellant against those of Mrs. Bush, his principal. Appellant ought not to be heard to give that construction to his letter, unless it is the only construction of which it is susceptible. He ought not to be permitted to say in his own defense that he was trying to buy the agent to act against the interests of his principal. We are of opinion that the letter means nothing of the kind. As already stated appellant was asking the agent to put him into personal communication with the owner and her son in order that he might try to induce her to reduce the price, and he was simply giving the agent assurances that if he bought the property, by means of such direct deal with the owner, he would pay the agent or see that he was paid, so that he need have no fear of losing his time and labor if the parties dealt directly with each other. Appellee was not guilty of any lack of good faith to his principal. He at once sent this letter to Joseph Bush and thus communicated it to Mrs. Bush, and he also at once wrote appellant that he had referred that letter to the owner. Appellant's agreement was not void as being against public policy.

The declaration contained a count for commissions as a real estate broker for real estate sold by plaintiff to defendant at his request and which defendant promised to pay to plaintiff, and also the consolidated common counts. With this declaration he filed the ordinary "copy of account sued on," including "To commissions as real estate broker, $500." He afterwards filed a bill of particulars which is set out in the bill of exceptions, the body of which is as follows: "To commissions due from the defendant to the plaintiff as real estate broker for certain real estate sold by the plaintiff to the defendant at his special instance and request, $150. To

damages sustained by the plaintiff by reason of the breach on the part of the defendant of a certain contract and agreement made and entered into by the defendant, whereby the defendant agreed to protect the fee of the plaintiff as real estate broker in and about the sale of certain real estate for which the plaintiff was then and there, to-wit: on or about the first day of September, 1905, the agent, $150." Appellant contends that on these facts there can be no recovery under this declaration, but that there should have been a special count upon the contract embodied in the letter of July 20th. This, however, is based upon appellant's contention that appellee did not induce the sale or earn compensation. As already suggested, we are of opinion that appellee did all that was essential to entitle him to compensation from Mrs. Bush and that under the proofs above stated, the contract had been performed by appellee and that his commissions had been earned and that appellant was liable therefor to appellee and ought in equity and good conscience to pay the same. Appellant sought to convey the impression by his testimony that after his interview with appellee and before his interview with Mrs. Bush, he had abandoned all thought of purchasing this property. When all of the proofs are considered, with the dates of the letters and documents, we are satisfied that this position is untenable.

Complaint is made of the instructions. Those given at appellant's request were more favorable to him than he was entitled to. If the instructions given for appellee were in any respect defective, yet we may say as was said in Lehigh Valley Transportation Company v. Post Sugar Co., 228 Ill., 121, "Appellee was clearly entitled to recover from appellant, and it would not promote the ends of justice to reverse this case for a new trial on account of technical errors in the instructions."

The judgment is therefore affirmed.

*Affirmed.*