JAMES J. McLAUGHLIN, DEFENDANT IN ERROR, v. NEIL CAMPBELL, PLAINTIFF IN ERROR.

Argued June ·23, 1909—Decided November 15, 1909.

A suit was brought by a real estate broker for commissions claimed to be due him for the sale of land by him while acting under a written authority of sale given him by the owner, and the defence was interposed that the plaintiff had not been proved to have been the efficient procuring cause of the sale. The defendant having moved the court to direct a verdict in his favor, it was *held*—

(1) That under the evidence (the material parts of which are recited in the following opinion) the motion was properly denied.

(2) And *held, further,* that under the facts disclosed in the case, the defendant's liability to respond to the plaintiff for the commissions sued for did not depend upon the circumstance of what parties formally entered into the written contract of sale, offered to, or engaged in, by defendant, but wholly upon the fact as to who constituted the real parties to the bargain.

(3) And *held, also,* that the plaintiff's right of recovery was not dependent upon the *knowledge* of the defendant that the purchaser came to purchase in consequence of information obtained through the plaintiff.

· On error to the Hudson County Circuit Court.

For the plaintiff in error, *Collins & Corbin.*

. For the defendant in error, *Robert S. Hudspeth* and *Merritt Lane.*

The opinion of the court was delivered by

VREDENBURGH, J. The plaintiff below (a real estate broker), in a suit brought by him to recover brokerage commissions, declared upon, and, at the trial, produced and proved in support of his declaration, a written agreement and authority, dated November 11th, 1903, signed by the defendant, authorizing the former, as his agent, to offer for sale or exchange several lots of land in Jersey City, N. J., and thereby agreed to pay him, in case of their sale, two and one-half per centum commission on a purchase-price of $45,000. The defendant, by the express terms of this paper, asserted his ownership of the lots, calling them therein his "property." While it subsequently transpired that they were not his property, and he had never been seized of the legal estate in the lands, being but a mortgagee thereof, yet, it was conceded at the trial, through his counsel, that no advantage could be taken by him of such fact, as against the plaintiff, presumably for the reason that the recital of ownership in the agreement upon which the latter had been led to act estopped the defendant from denying it. The trial was held before the Hudson County Circuit Court and a jury, and the plaintiff's evidence tended to show that he had brought about the introduction of the buyer to the defendant, and had been efficient in obtaining a purchaser for the property at the price named; that a sale had finally resulted from his negotiations, and a deed of conveyance, dated October 31st, 1905, executed by the defendant's son (who was the real owner of the property) to one Louis Resnick, had been delivered in pursuance of such sale; that the defendant had then received the purchase-price of $45,000, but had refused to pay plaintiff the agreed upon

commission.  In this position of the proofs the plain question which remained to be settled by, and substantially submitted to the finding of the jury by the court, was, whether the plaintiff had been the efficient cause of the sale.  If so, he was entitled to their verdict.  In this state, in the case of *Vreeland* v. *Vetterlein,* 4 *Vroom* 247-249 (decided in 1869), the rule of law upon this subject was expressed, in the pointed language of Chief Justice Beasley, speaking for the Supreme Court, as follows: "It is certainly true, as a rule of law, that under ordinary circumstances, where a broker employed to sell property, brings about an introduction of a buyer, and when a negotiation, resulting in a purchase, ensues on that foundation, the owner and the buyer cannot, by any arrangement, disappoint the claim of the agent for remuneration. If this could be done, it is obvious the agent would, in all cases, be in the power of his employer, who, by taking matters into his own hands, could, at will, defeat the just expectations and equitable rights of the broker or middleman.  In this class of cases, the question then *always* is, whether, under the peculiar conditions of the given case, the agent was the efficient cause of the sale, and when there is real doubt upon the point, such doubt must be solved by the jury."  A reference to the books containing citations of the later opinions of our courts upon this subject—which are quite numerous—will exhibit entire approval of this statement of the law, and it is indisputable in this case that the trial judge, in his charge, fairly presented the issue in this form and effect to the jury.

The counsel of the plaintiff in error now urge, as their principal ground for reversal, that the trial judge erred, in refusing their motion, to direct a verdict in favor of their client, insisting—to use the words of their brief—that "the plaintiff was not the efficient procuring cause of the sale, that his sole connection with the affair was to hand to each of the brothers Resnick a list of the properties, including Campbell's, to describe the Campbell property and give Neil Campbell's name and address."

Without stopping to consider whether, even under this very

narrow rendering of the proofs respecting the plaintiff's introduction of the buyer, there would not, at least, arise a jury question as to the plaintiff's instrumentality in effecting such sale, it will be sufficient to point out that the evidence for the plaintiff took a much wider range, and we think fairly presented a case which the trial court, in view of the rule of law referred to, would not have been justified in taking from the jury. Briefly, the pertinent facts testified to in this regard were the following: That, at the date of the agreement, and for about three years prior, the plaintiff, acting as the defendant's agent, had collected the rents accruing from the buildings upon the property; that subsequent to that date, and while the plaintiff had undertaken to get a purchaser under his brokerage employment above named, one Louis Resnick, who afterwards became the grantee in the deed above referred to, and his brother, · Abram Resnick, came, separately, to him and obtained from him, not merely a list of the properties in question for sale, but also had each, on several occasions, conversed with him about them, and—to use the plaintiff's expressions—he "had talked the property up the most to them of any that I had, because it was the biggest sale;" that he had given them "the particulars of the property, together with the defendant's name and address;" that afterwards, on December 31st, 1903, the defendant came into his office and said he had a buyer for the property, and the plaintiff then looked out of his office into the street and saw one of the brothers Resnick, whom, he subsequently ascertained, was Abram, standing about three-quarters of a block away on the corner of the street, and the witness then told defendant *"that person* (designating him) was his customer, and he had sent him to defendant," and the latter replied, "Yes, his name is Resnick;" that plaintiff and defendant then had conversation in which the latter remarked he had an offer of $45,000, and did not know whether to sell or not, and thereupon plaintiff said to him "that was the price he had submitted to these people, the Resnicks;" that defendant then said "I don't know whether to sell or not," and plaintiff re-

plied, "Well, you are the owner, you are the one to decide." It is a significant fact here that defendant, in this conversation, did not deny that this offer had come from the Resnick who was then pointed out to him by the plaintiff as his "customer." His silence, under the circumstances, warranted the jury in inferring his assent. The defendant then asked plaintiff to be permitted to see his book containing the rents collected by him from the property, which were then produced to him, and they, together with plaintiff's clerk, examined them. On the same day, December 31st, 1903, the documentary and other evidence shows that the defendant, in another office, but without the knowledge of, or notice to, the plaintiff, entered into a written agreement of sale, purporting to have been made with Joshua Resnick (the father of Abram and Louis), and one Harris Cohen, by which the defendant agreed, for the price of $45,000, to sell and convey to them the property in question, on or before February 15th, 1904. There was also direct testimony, justifying the conclusion that both Abram and Louis Resnick were undisclosed parties to this agreement of December 31st, 1903, and were interested jointly as purchasers with the two persons named in this contract, although their names were omitted from it. The question whether Abram and Louis Resnick, or either of them, with each of whom the plaintiff had, as above stated, come into previous contact, were, in fact, though unnamed in the writing, also joint purchasers, was left, under proper instructions by the court, to the jury. In this situation of the proofs a direction of a verdict for the defendant would have been, we think, clearly error.

The refusal of the trial court to charge certain requests of the defendant below is next made the subject of several assignments of error. All of them seem to me to seek to introduce into the case propositions of fact and law which were foreign to the issue on trial, and have been, in effect, sufficiently, I think, disposed of by what has been said above. But, assuming for the sake of the argument, they were within the issue, their merits may be more satisfactorily understood by further consideration.

The first is thus expressed, viz.: "No proof of an exclusive agency, irrevocable until withdrawn, having been made, the jury should find that defendant had the right to deal with another broker, even though that broker learned from the plaintiff that the property contracted for was for sale by defendant." But even if this request had been granted, and the instruction had been given, that "the jury should find the defendant had the right to deal with another broker," yet, *non constat,* that plaintiff had not been the efficient cause of the sale and entitled to the commissions.

The other broker, to whom this request presumably refers, was Abram Resnick, who apparently had a written authority to sell the property, purporting to have been executed by the defendant on December 31st, 1903, the very day on which he also signed the contract of sale. How a broker, acting in good faith in the usual course of that business, could have had sufficient opportunity, on the same day of his appointment, to negotiate and also consummate at once, by contract with the owner, so important a sale, must have been viewed with suspicion by the jury. But admitting its possibility as a matter of fact, the legal conclusion to be drawn from it is clear that Abram could not be both broker and purchaser at the same moment. As soon as he became a purchaser, or principal, his agency ceased, and his legal authority to act as a broker, *ipso facto,* became inconsistent and invalid. He could not legally act in such dual relations, however great his agility to turn a somersault. The plaintiff, therefore, had the only agency in which any right to commissions from the defendant could inhere. *Hinds* v. *Henry,* 7 *Vroom* 328; *Somers* v. *Wescoat,* 37 *Id.* 551, and cases cited below.

Such right could not be defeated by any default of his principal. *Ryer* v. *Turkel,* 46 *Vroom* 677. Nor did the latter, in fact, recognize the right of any other broker to commissions. He paid none to anyone, and the jury had a right to infer from his admissions in the proofs, that he had successfully exempted himself from such payment to Abram Resnick, the only person, other than the plaintiff, who pretended or claimed to be entitled to brokerage commissions. The evi-

dence before the court justified the jury in finding that Abram Resnick was secretly interested as a purchaser under the agreement of sale, and that it was taken by the defendant, in the names of others in collusion with him, for the purpose of concealment, in order that Abram might appear in the false role of a broker, instead of a buyer, and thus either obtain the commissions for himself, or, at least, defeat the plaintiff's recovery of them. The judge charged that if the real purchasers were Joshua Resnick and Cohen the verdict should be for the defendant, but that if the four persons, namely, Abram, Louis and Joshua Resnick, and Cohen, were the real purchasers, their verdict should be for the plaintiff if they should find he had been the procuring or efficient cause of the sale. The plaintiff had claimed before the jury, under the evidence, that both Abram and Louis were purchasers whom he had procured, and the defendant had insisted that they were not, and this question of fact the court properly left to the finding of the jury.

Another refused request reads as follows, viz.: "An interest by parol of Abram Resnick in such purchase did not give the plaintiff a right to commission even though it may have been through plaintiff that Abram came into negotiation with defendant. To effect that right in such a case it would have been necessary that defendant should have been offered a binding contract with Abram himself, and not with other persons with whom Abram was secretly interested."

To the proposition of law embodied in this request to the effect that the plaintiff was bound to show, in order to recover, that the defendant had been offered a binding contract with Abram himself, and not with other persons with whom Abram was secretly interested, we do not assent. If that proposition be sound law, the principle, as established and approved in the cited case of Vreeland *v.* Vetterlein, must have been incorrectly laid down. Such a rule would leave it in the power of the owner to act in collusion with the real purchasers, who, after obtaining a profitable bargain and availing themselves of the services of the broker to that end, might, by a secret arrangement with the owner, in respect to the formal parties

to the agreement of sale, deprive the agent of his earned commissions, and disappoint his claim for remuneration. As is succinctly expressed in the above quoted opinion in the Vreeland case, "if this could be done it is obvious the agent would, in all cases, be in the power of his employer, who, by taking matters into his own hands, could, at will, defeat the just expectations and equitable rights of the broker." Under the facts disclosed in the case at bar, the defendant's liability to respond to the plaintiff for the commissions sued for was not at all dependent upon the circumstance of what parties formally entered into the written contract of sale offered to or engaged in by defendant, but wholly upon the fact as to who constituted the *real* parties to the bargain. This was, in effect, the instruction correctly given by the court to the jury.

The further denied requests to charge were made in the following terms, viz.: "A real estate broker not having an exclusive agency, irrevocable until withdrawn, has no claim for commission on a sale unless he introduces the purchaser to his client in such a way as to make it evident that such purchaser comes from him."

"Where property is placed with a real estate broker, for sale for a definite price, not to be modified except with his client's consent, he cannot claim commissions on a sale negotiated by his client for a less sum, either in reduction of price or by way of commissions to another broker, if the client has no *knowledge* that the person to whom he makes the sale was sent to him by the broker with whom he had put the property for sale." But it is settled by the authorities that the plaintiff's right of recovery is *not* dependent upon the *knowledge* of the defendant that the purchaser came to purchase in consequence of information obtained through the plaintiff. *Vreeland* v. *Vetterlein, supra; Derrickson* v. *Quimby,* 14 *Vroom* 373; *Somers* v. *Wescoat,* 37 *Id.* 551, 553; *Sussdorff* v. *Schmidt,* 55 *N. Y.* 320.

Also it must be remembered that the testimony in the case justified the jury in finding that the defendant possessed such knowledge. The judgment below should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, GRAY, DILL, CONGDON, JJ.   13.

*For reversal*—None.