[Civil No. 1426.    Filed June 12, 1915.]

[149 Pac. 384.]

THE LEADVILLE MINING COMPANY, a Corporation, and H. E. DUGAN and G. M. GREENIDGE, Interveners, Appellants, v. GEORGE E. HEMPHILL, Appellee.

1. BROKERS—COMMISSIONS.—WHEN EARNED.—A broker employed to procure a purchaser at a price to be fixed by the principal when he and the prospective purchaser meet performs his duty when he procures a customer who enters into a contract with the principal to purchase, though the principal effected a sale without the aid of the broker.

2. BROKERS—COMMISSIONS—WHEN EARNED.—Where a principal employs two or more brokers to make a sale of his property, and the brokers act independently and with knowledge of the fact, the one who first completes a sale is entitled to the commission, though the other brokers may have rendered services contributing to the final result.

3. BROKERS — EMPLOYMENT — CONTRACTS — RIGHTS OF PARTIES. — A broker employed to procure for a commission a customer with whom the principal would enter into an option contract on such terms as might be agreed on between the principal and the customer need not consummate a deal, and where the principal employed another broker to consummate a trade with the customer procured by the former broker the principal was liable for double commissions.

4. BROKERS—COMMISSIONS—WHEN EARNED.—A broker employed to procure for a commission a customer with whom the principal could enter into an option contract for the purchase of property need only, to recover the commission, be the procuring cause of negotiations resulting in a binding contract.

[As to when a broker's commissions are earned, see notes in 28 Am. St. Rep. 546; 139 Am. St. Rep. 225.]

5. APPEAL AND ERROR—VERDICT—REVIEW.—The weight of the evidence is exclusively for the jury, and their verdict will not be disturbed on appeal.

6. APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.—Where a correct result was reached by the jury, and another trial with a proper charge could not change the result, technical errors in the charge are not reversible.

APPEAL from a judgment of the Superior Court of the County of Cochise.    J. E. O'Connor, Judge.    Affirmed.

Mr. Wm. B. Cleary and Messrs. Richardson & Pattee, for Appellant.

Mr. J. F. Ross and Mr. Bruce Stephenson, for Appellee.

FRANKLIN, J.—On or about October 22, 1912, the appellant, Leadville Mining Company, who was defendant below, by its agreement gave an option to one Apollos Fuller to purchase its property situate in the Turquoise mining district, Cochise county, Arizona, and the said Fuller having paid to appellant on account of said option some $30,000, the appellee, as plaintiff, brought this action to recover compensation for his services in the matter. The plaintiff's right to remuneration must necessarily arise by reason of a contract therefor, either express or implied. We must note with care this agreeement, if any, and if we can get a clear comprehension of this essential and basic feature, it will not be difficult to ascertain in what manner and to what extent the party seeking remuneration shall be compensated for his services, if at all.

Owing to the variations in the form of the condition of a broker's employment, it must readily occur how impossible it is to deduce any general rule as to his undertakings governing a given case, and in this case an oversight to first clearly ascertain the facts before attempting to accommodate a rule of law to the situation has invited a misapprehension of its true perspective, and has occasioned some confusion as to the real issue involved in the trial of the case. "The right of a commission for the sale of land," says Mr. Justice McClain, in *Jones* v. *Buck* (Iowa), 120 N. W. 112, "is dependent so much upon the terms of the agreement under which such commission is claimed that authorities applicable to one set of facts and language used in opinions with reference thereto may be entirely without application to facts which are essentially different." Was there a special contract of employment, and if so, what service did the party who asks for compensation undertake to perform, and has he performed the service contracted for? If the services contracted for have been performed, does the contract fix the amount of compensation for such services? Such are the inquiries in this case. In substance the complaint alleges that

the appellee had a contract with the appellant, by which he was employed to procure a customer with whom the appellant would enter into an optional contract for the purchase of the appellant's properties, known as the Leadville properties, situate in the Turquoise mining district, Cochise county, Arizona, and that it was agreed between appellant and appellee that appellee should receive as compensation for his services a commission of 10 per cent of any and all moneys paid to appellant on account of said optional contract; that this contract of employment further provided that all the terms and conditions of any such optional contract were left entirely with and were to be fixed by the said appellant and the customer secured by appellee; that appellee did secure a customer, and that appellant and such customer did enter into an agreement by which said customer was given an option to purchase said properties and has paid on account of said option some $30,000.

Before the trial, by leave of court, one S. M. Greenidge and one H. E. Dugan were permitted to intervene in said action. In the answer and petition in intervention they set up a contract of employment with the appellant, and also pleaded a recognition in writing by appellant of said contract of employment, which is as follows:

"Know all men by these presents, that whereas, the Leadville Mining Company, a corporation, duly organized and existing under the laws of the state of Arizona, is the owner of valuable mining properties, situate in the Turquoise mining district, in Cochise county, state of Arizona, and is desirous of selling the same, does by these presents, acknowledge that S. M. Greenidge, mining engineer and broker of Douglas, Arizona, has assisted and finally concluded the sale of the said properties to Apollos Fuller, and that the said S. M. Greenidge was requested by the said company to sell said properties upon the condition that if the said Greenidge consummate a sale of the same, he should receive a commission of 10 per cent of the purchase price for which said properties were to be sold. The said commission shall be paid to the said Greenidge as the same is paid to the company; that is to say, 10 per cent of each payment as it is paid, to be set aside to the credit of the said Greenidge in the First National Bank of Douglas, Arizona.

"Done at Pearce, Cochise county, Arizona, October 21, 1912."

The interveners further show that while the contract was in the name of Greenidge, the said Dugan was equally interested with him therein, and that they have received from appellant the sum of $3,000 for said services. Whether or not the leave to intervene on the showing made was improvidently granted because interveners did not show an interest in the subject matter of appellee's suit which could be affected by the judgment; in other words, because interveners do not show they were possessed of such an interest in the subject matter of the action of such a direct and immediate character that "they would either gain or lose by the direct legal effect and operation of the judgment," we do not pause to consider. Interveners have not appealed. But that such intervention did occasion much confusion as to the real issue, in the case, to the disadvantage of appellee becomes apparent.

The duties of a broker in the absence of a special contract therefor may, of course, be broadened or narrowed according as a special contract for such services shall specify. Here we observe a marked difference in the services which the appellee undertook to perform, and the services which the interveners undertook to perform. The services of appellee were in reality those of a middleman, whose duty is performed when by his efforts as the procuring cause the buyer and seller are brought together and a sale results, even though the owner of the property effects the sale without the aid of the person who brought the owner and purchaser together. In *Stewart* v. *Mather,* 32 Wis. 344, Chief Justice Dixon says:

"A broker whose undertaking merely is to find a purchaser at a price fixed by the seller, or at a price which shall be satisfactory to the seller when he and the purchaser meet, is in reality only a 'middleman,' whose duty is performed when the buyer and seller are brought together."

Under the contract of employment relied upon by the interveners they undertook to negotiate a deal, and their right to compensation was upon condition that they finally conclude or consummate a deal.. The undertaking of the appellee was simply to bring the parties together. He had no hand in the negotiations between them, but they were to make their own bargain without his aid or interference, his compensation,

however, to be contingent upon such bargain being finally concluded. That of the interveners was different. They were called upon not only to negotiate a bargain, but to finally conclude and consummate the same.

Notwithstanding this marked difference in their respective undertakings, and the fact that interveners had been fully paid for their services, the course of the trial, by clever tactics on the part of appellant, drifted into a contest between appellee and the interveners, instead of a contest between appellee and appellant. The theory was pressed with more ingenuity than skill that appellee and interveners were, under their respective employment, rival brokers; their rights being governed by the case of *Garver* v. *Thoman,* 15 Ariz. 38, 135 Pac. 724. This case has no application whatever here. That is one of a class of cases where a principal employs more than one broker to make a sale of property, and the several brokers act independently and with knowledge of this fact, and the one who first completes a sale is entitled to the commission. In such a case a number of brokers may have rendered meritorious services, and each contributed something essential in producing the ultimate result, and without which it would not have been accomplished. In this circumstance it would not be right for all of them to recover compensation, so a discrimination must be made between them to ascertain whose services must be deemed the efficient and effective cause of the sale. Such was the case of *Whitcomb* v. *Bacon,* 170 Mass. 479, 64 Am. St. Rep. 317, 49 N. E. 742, cited as authority in the *Garver Case, supra.* In this latter case the court said:

"So where several brokers have each endeavored to bring about a sale which finally is consummated, it may happen that each has contributed something without which the result would not have been reached. One may have found the customer who otherwise would not have been found, and yet the customer may refuse to conclude the bargain through his agency; and another broker may succeed where the first has failed. In such a case, *in the absence of any express contract* (italics ours), that one only is entitled to a commission who can show that his services were the really effective means of bringing about the sale, or, to use the language of Phillips, the predominating efficient cause."

See, also, *Scott* v. *Lloyd,* 19 Colo. 401, 35 Pac. 733; *Daniel* v. *Columbia Heights Land Co.,* 9 App. D. C. 483; *Farrar* v. *Brodt,* 35 Ill. App. 617; *Mears* v. *Stone,* 44 Ill. App. 444; *Platt* v. *Johr,* 9 Ind. App. 58, 36 N. E. 294; *Higgins* v. *Miller,* 109 Ky. 209, 58 S. W. 580; *Kice* v. *Dugan,* 143 Ky. 676, 137 S. W. 240; *Ward* v. *Fletcher,* 124 Mass. 224; *Francis* v. *Eddy,* 49 Minn. 447, 52 N. W. 43; *Vreeland* v. *Vetterlein,* 33 N. J. L. 247; *Dreyer* v. *Rauch,* 3 Daly (N. Y.), 434; *Baker* v. *Thomas,* 12 Misc. Rep. 432, 33 N. Y. Supp. 613; *Jennings* v. *Trummer,* 52 Or. 149, 132 Am. St. Rep. 680, 23 L. R. A. (N. S.) 164, 96 Pac. 874; *Glascock* v. *Vanfleet,* 100 Tenn. 603, 46 S. W. 449.

As we have said, it is so important to note the contract of employment, if there be an express contract, and ascertain what the broker undertook to do, and if he has completed his undertaking. Under the allegations of his complaint the appellee here was entitled to his commissions by putting the appellant into communication with the one who took an option upon the property. It was no part of his employment to consummate the deal, for the consummation thereof was by the very terms of his employment reserved to the appellant. If the owner chose to employ another broker to consummate the deal, that was no concern of the appellee, for the owner had that right. The owner was at liberty to employ one person to find a customer and another to finally consummate a trade with that customer, and if the owner has done this, it is just simply one of those cases where the owner of property has by his acts made himself liable to pay double commissions on account of one transaction.

It is very clear that if the employment of a broker is to find a customer, and he brings his principal and the prospective customer together and a trade is consummated, the broker is entitled to his commission, even though the principal effects the deal without the aid of the broker. See *Clark* v. *Morris,* 30 App. D. C. 553; *Dean* v. *Archer,* 103 Ill. App. 455; *Henry* v. *Stewart,* 185 Ill. 448, 57 N. E. 190; *Wright* v. *McClintock,* 136 Ill. App. 438; *Gibson* v. *Hunt* (Iowa), 94 N. W. 277; *Driesback* v. *Rollins,* 39 Kan. 268, 18 Pac. 187; *French* v. *McKay,* 181 Mass. 485, 63 N. E. 1068; *Willard* v. *Wright,* 203 Mass. 406, 89 N. E. 559; *Reishus-Remer Land Co.* v. *Benner,* 91 Minn. 401, 98 N. W. 186; *Enochs* v. *Paxton,* 87 Miss. 660, 40 South. 14; *Myers* v. *Dean,* 10 Misc. Rep. 402, 31 N. Y.

Supp. 119; *Holmes* v. *Neafie,* 151 Pa. 392, 24 Atl. 1096; *Canadian Improvement Co.* v. *Cooper,* 161 Fed. 279, 88 C. C. A. 325.

Under such a contract as the one alleged by appellee, it is not necessary, in order to fulfill his undertaking, that the broker should take the customer to the owner of the property and give him a formal or any introduction. It is sufficient if he is the procuring cause of negotiations which result in a binding contract, even though the negotiations are conducted and concluded by the owner in person, or through the agency of some other person employed for that purpose. If the owner of the property before consummating the deal acquires the knowledge—it matters not in what manner—that the person he is dealing with is the client of the broker, and has been procured by such broker for that specific purpose, this is all that is necessary. If there be real doubt under the peculiar circumstances of the given case, as to whether or not the broker has fulfilled his undertaking, such a doubt must be solved by the triers of fact and not by the appellate court. See *Church* v. *Dunham,* 14 Idaho, 776, 96 Pac. 203; *Wright* v. *McClintock,* 136 Ill. App. 438; *Wood* v. *Smith,* 162 Mich. 334, 127 N. W. 277; *Gray* v. *Carroll* (Tex. Civ. App.), 105 S. W. 214; *Lane* v. *Cunningham,* 171 Mo. App. 17, 153 S. W. 525; *McLaughlin* v. *Campbell,* 78 N. J. L. 541, 74 Atl. 530; *Shea Realty Corp.* v. *Page,* 111 Va. 490, 69 S. E. 327.

Appellant contends that the verdict of the jury that appellee was the procuring and efficient cause of the sale is against the weight of the evidence. That the weight of the evidence is for or against an issue is exclusively the province of the jury to determine, with whose judgment in such a matter we may not interfere. It is also assigned as error that the evidence is insufficient to support the judgment. The burden of the argument on this assignment is that the evidence fails to show that Hemphill, the appellee, brought Fuller, who took the option on the property, in accord with the Leadville Mining Company, the appellant. But the bringing of the owner and the optionee into accord and finally consummating the deal was no part of the undertaking of appellee. That duty by the terms of their employment rested upon the interveners, and for the performance of that duty

the interveners were compensated by the appellant. The jury believed the testimony of the appellee and disbelieved that of the appellant and interveners, and it is very clear from appellee's testimony that he put the appellant into communication with the person who subsequently became the optionee, and that appellant knew when it was dealing with such person that he was the customer of appellee. As observed by Mr. Justice EAKIN, in *Jennings* v. *Trummer,* 52 Or. 149, 132 Am. St. Rep. 680, 23 L. R. A. (N. S.) 164, 96 Pac. 874:

"Although plaintiffs did not actually introduce Mrs. Lange to the defendant, it was not necessary that they do so. They did advise him of the prospective sale and of the name of the purchaser, and, if defendant dealt with her as the result of such information, then plaintiffs brought them together; and the evidence was sufficient to be submitted to a jury on that question. . . . Whatever may be the rights of a real estate broker who takes a customer away from another and closes a sale between such customer and the owner, if done without the aid or connivance of the owner, yet if the owner, with knowledge of the facts, deals with the customer of the first broker, even through another agent, he will be liable to the first broker; and, in view of the evidence in this case, it is a question for the trior of the facts to determine, whether the defendant did not collude with Cottrell to defeat plaintiff in his efforts to complete the sale."

The appellee did express the belief at one time that he was more confident of getting some Colorado people to deal for the property than he was to get the said Fuller, but this would not authorize appellant to simply cease to recognize appellee in the transaction after it had been put into communication by appellee with this prospective customer, nor authorize the appellant by carrying on independent negotiations through other brokers to escape the payment of a commission to appellee. The evidence abundantly justifies the finding of the jury in favor of appellee.

Error is predicated on the instructions of the court. The instructions complained of were given on the theory which seems to have dominated the trial that the issue in the case was whether the appellee consummated the deal for the property and was entitled to the commission, or whether the interveners, Greenidge and Dugan, consummated the deal and

were entitled to the commission. It was agreed on the trial there was but one commission to pay, and the amount of such commission was agreed upon.

In its answer the appellee alleges:

"That the defendant is indebted either to the plaintiff or the interveners, in the sum of three thousand dollars ($3,000.00), being 10 per cent of the thirty thousand dollars paid by said Apollos Fuller, purchaser, to this defendant as a commission and will become indebted and liable to pay to either the plaintiff or the interveners in this case 10 per cent of the said sum of five hundred seventy thousand dollars to be paid by the said Apollos Fuller to this defendant as the balance of the purchase price of the said properties owned by the said defendant, generally known as the Leadville properties in the Turquoise mining district, Cochise county, Ariz., when the said payments become due, and are paid by the said Apollos Fuller to this defendant."

And again:

"Defendant alleges that either the plaintiff, George E. Hemphill, or the interveners, S. M. Greenidge and H. E. Dugan, made an optional contract of sale for all the properties owned by the said defendant, generally known as the Leadville properties, in the Turquoise mining district, Cochise county, Ariz., to Apollos Fuller, on or about the 21st day of October, 1912, for the sum of six hundred thousand dollars, but is not able, for lack of information and evidence, to decide which of the said parties, plaintiff or interveners, are entitled to receive the commission."

At the close of appellee's testimony, Mr. Richardson, attorney for appellant in the court below, said:

"I don't know that we have very much defense one way or the other. We are willing to pay this money to the man we owe it to. I may want to ask some questions of this witness in order to protect the interest of the company. I don't care to put on any witnesses except I may want to show that this forty thousand dollars was received for ores. Five thousand dollars of which was paid out for debts that would have been a lien on the property, leaving about five thousand that we have to pay commission on, provided that the five thousand was not used for the purpose of paying debts that would have become a lien on the property. Of course, I would want

to make that clear in order not to have to pay any more commission.''

In view of counsel's adroitness in switching the issue as between appellee and appellant to a contest between appellee and the interveners, we do not understand how appellant is in a position to complain, for the movement was all to the disadvantage of the appellee. If there was error in the charge so far as appellant is concerned, it was technical error. We will not reverse cases for technical error in the charge of the court below, when a correct result was reached by the jury, and where we are persuaded that another trial with a proper charge could not change the result. The appellant may not profit unjustly by the mistake of the trial court in the giving of an erroneous instruction.

Affirmed.

ROSS, C. J., concurs.

CUNNINGHAM, J., Concurring.—This action was commenced by appellee, as plaintiff, against appellant, as defendant, seeking to recover a sum equal to 10 per cent of an amount of money received by appellant from one Apollos Fuller on an optional sale of appellant's mines to Fuller, alleging that appellee procured and induced the making of such optional sale pursuant to a verbal agreement entered into with appellant on or about the twenty-eighth day of July, 1912; and, that by the terms of such verbal contract appellant promised, in consideration that appellee would procure such a purchaser, it would pay appellee said commission at said rate upon all payments made by such purchaser as and at the dates when paid. The appellee alleges performance on his part by procuring a purchaser to whom an optional sale was made, payment of a part of the purchase money by the optional purchaser, to appellant, alleging the amount of such payments is unknown to plaintiff, alleging demand of payment of his commission and a failure to pay to him. These facts setting forth a cause of action upon the verbal contract appear in the mass of evidentiary matters appearing in the complaint, and no other cause of action is therein stated.

The defendant answered, denying the making of the verbal contract in express terms, then admitted the making of the optional agreement with Fuller, and receiving about $30,000 from him as payment on the purchase price of the mines, denied that Fuller was appellee's customer, and alleged that Fuller was a customer of another firm of brokers, Greenidge & Dugan, who induced Fuller to purchase the property, and denied its liability to appellee.

In the nature of an answer to a petition of Greenidge and Dugan, styling their appearance as interveners, defendant admits the execution by it of a written contract to pay said parties a commission of 10 per cent for their services "in procuring a purchaser for said properties"; and admits that Fuller did on the twenty-first day of October, 1912, purchase optionally the properties mentioned, and paid of the purchase price $30,000 as the first installment, "but defendant is not positive that the said interveners did procure a purchaser for said properties, to wit, Apollos Fuller, and therefore denies same." Defendant admits that it paid said interveners 10 per cent of the $30,000 paid by Fuller, viz., $3,000 and no more, and admits that other sums may become due to them in case other installments should be paid by Fuller.

Then answering both the complaint and the petition in intervention, defendant admits the sale of the mines to Fuller and payment by Fuller of the said $30,000 and alleges:

"That the defendant is indebted either to the plaintiff or the interveners, in the sum of three thousand dollars ($3,000.00), being 10 per cent of the thirty thousand dollars paid by said Apollos Fuller, purchaser, to this defendant as a commission and will become indebted and liable to pay to either the plaintiff or the interveners in this case 10 per cent of the said sum of five hundred seventy thousand dollars to be paid by the said Apollos Fuller to this defendant as the balance of the purchase price of the said properties . . . when the said payments become due, and are paid by the said Apollos Fuller to this defendant. That this defendant is not in possession of sufficient information or evidence to determine whether the plaintiff, Geo. E. Hemphill or the interveners, . . . or which of them, did procure the purchaser, to wit, Apollos Fuller, for said properties, and for lack of information, denies that either of the said parties, plaintiff or

interveners, procured and induced Apollos Fuller . . . to pur-
chase the properties. . . . That the defendant is now ready
and willing to pay the said commission to either the plaintiff
George E. Hemphill, or the interveners, . . . as the same may
become due and payable under the terms of said option, and
upon the judgment of this court.''

Defendant prays that the court adjudge and decree and
determine to which of the adverse claimants the defendant
pay the commission.

The interveners set forth their claim to the commission
alleging their superior right thereto, and denying plaintiff's
right to the same, basing their right to the commission upon
a written contract with defendant and its performance upon
their part and praying for a judgment for $57,000 to be paid
to them as the purchase price is paid.

Upon this state of the pleadings the cause was tried to a
jury and the jury rendered a verdict for the plaintiff, and
judgment was rendered in favor of the plaintiff against the
defendant, and another judgment was rendered in favor of
the defendant and against the interveners. This appeal is
from the judgment against the defendant and in favor of the
plaintiff. No appeal is prosecuted by the interveners, and
that judgment is not before us. The only issue for trial as
made by the pleadings is found in the question: To whom did
the defendant become liable to pay the commission, having
admitted its liability to one? Defendant admitted in effect
the making by it of a contract for commission with both the
plaintiff and with the interveners; admitted that the sale
resulted from the efforts of one of said parties, and admitted
that it was liable to the party through whose efforts the sale
was brought about. The contest was not between the defend-
ant and either of the other parties, the plaintiff or the in-
terveners, but the real contest was between the plaintiff and
the interveners, and the question contested by them was which
party brought about the sale and earned the commission.
Clearly, the original parties departed from the original cause
of action between the plaintiff and the defendant, viz., from
the action on a verbal contract, after taking issue on the
fact of whether plaintiff performed the contract. Defend-
ant thereupon not denying that the contract was in effect
performed, but alleging that defendant was uncertain whether

plaintiff's contract, or another contract of the like import was performed by others, and thereby shifted the burden from its shoulders to be maintained by the third party not a party to the case as originally commenced, and assumed the relation of stakeholder to the parties.

The third party, the interveners, voluntarily assumed the burden, to which plaintiff assented so far as the record discloses, and thereafter the suit became a contest between the plaintiff and the interveners, with the defendant standing by ready to perform the orders of the court, with no further interest in the case. Such became the relation of the parties among themselves.

Paragraph 1603 of the Civil Code of Arizona of 1913, provides that:

"A defendant, against whom an action is pending upon a contract, or for specific personal property, may, at any time before answer, upon affidavit that a person not a party to the action makes against him, and without any collusion with him, demand upon such contract, or for such property, upon notice to such person and the adverse party, apply to the court for an order to substitute such person in his place, and discharge him from liability to either party, on his depositing in court the amount claimed on the contract, . . . and the court may, in its discretion, make the order.

"And whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims among themselves. The order of substitution may be made and the action of interpleader may be maintained, and the applicant or plaintiff be discharged from liability to all or any of the conflicting claimants, although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another."

Here the conflicting claims are made on the defendant, and it has informally caused the adverse claimants to come before the court. The so-called interveners came voluntarily and answered without notice. Every substantial feature of interpleader is present in this case and the adverse claimants have informally asserted their adverse rights. No demurrer was

filed by anyone to defendant's pleading, and formal defects therein, if any existed, were waived. 23 Cyc. 28.

The appellant from its pleading had nor has no interest in the subject matter of the suit, as it was contested by the adverse claimants upon the trial, and therefore its appeal must be dismissed. 2 Cyc. 628, and authorities cited in note 48.

It is the duty of this court to review the record on the theory upon which the case was tried in the lower court, as the parties cannot elect to try their causes on one theory in the lower court and, when defeated on that line, assume a different position in the appellate court. 3 Cyc. 243, and cases cited in note 46.

For these reasons it is my opinion that this appeal should be dismissed and cause thereby the judgment appealed from to become final as rendered.

---

As to when a broker is procuring cause of sale when several brokers are employed, see notes in 44 L. R. A. 337; 23 L. R. A. (N. S.) 164; 27 L. R. A. (N. S.) 195.

On performance of a contract by a real estate broker to find a purchaser or effect an exchange of his principals' property, see note in 44 L. R. A. 593.