## Alex. Friend et al., Defendants in Error, v. Charles W. Triggs Company, Plaintiff in Error.

### Gen. No. 14,387.

BROKERS AND FACTORS—*what essential to earning of commissions.* In order that a broker shall be entitled to recover commissions for bringing about a lease of premises, it must appear that he brought about an agreement between the parties to such lease, or else it must appear that he was wrongfully prevented by his principal from so doing; such a principal has a right to employ several brok-

ers with respect to the effectuation of the same transaction and may consummate the same with the buyer who is first procured by any of them without being called upon to decide which of such brokers was the primary cause of the sale, providing he remains neutral between them and is not guilty of any wrong.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and judgment here for the defendant. Opinion filed March 9, 1909.

FREDERICK P. VOSE, HUBERT E. PAGE and ALLEN FRAKE, for plaintiff in error.

EVERETT & McGONIGLE, for defendant in error; JOHN C. EVERETT, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

November 18, 1907, plaintiff in error, a corporation, leased to one Rapp, who did business under the name of the Novelty Paper Box Works, certain premises at 17 and 19 Milwaukee avenue, for a term of years from December 1, 1907.

Defendants in error, real estate brokers, brought an action in the Municipal Court against plaintiff in error, "for commissions on lease to Novelty Paper Box Works." A trial by the court, without a jury, resulted in a judgment for plaintiffs for $96, to reverse which defendant prosecutes this writ of error.

The errors assigned are sufficient to bring before us for review the question whether, on the law and the evidence, the plaintiffs were entitled to recover against the defendant.

About October 15, 1907, the plaintiffs were authorized by the defendant to procure a tenant for the premises in question, but were not given an exclusive agency or authority to procure such tenant. A few days later, the box factory of Rapp was burned.

The evidence in the record as to conversations and transactions between Peton, a representative of the

plaintiffs, and Eaton cannot be considered.    Eaton was a die cutter in the service of Rapp, and there is no evidence tending to show that he had any authority from Rapp to negotiate for him in reference to a lease, or that Rapp was informed of anything that Eaton may have said or done in respect to leasing or procuring premises for Rapp.

Peton testified that some days after the fire he saw Rapp and asked him if he was not ready to go to look at the place on Milwaukee avenue and that Rapp, "waved me off and said that he did not have time to go then; that he had insurance matters"; that a few days later he again asked Rapp if he was not, "ready to go over and look at that floor", and that Rapp said, "No, he had insurance matters to look over and was too busy;" that about October 30, plaintiffs received from defendant the following letter:

"GENTLEMEN:—As we have not yet heard from you anything definite about the renting of our Milwaukee avenue place, we beg to advise you that in case we can secure a tenant through some other means that we will pay the commission to the one that secures the tenant.    We have allowed you to put up your sign, and suppose that this understanding will be agreeable to you.    Kindly advise."

About this time Thorpe, another real estate broker, took Rapp to see the premises in question.    Peton had several interviews with Triggs, the president of the defendant, told him that if he leased to Rapp, plaintiffs would claim a commission; Triggs suggested that he see Rapp and if he could make a lease to him it was all the same to the defendant.    Triggs testified that Peton then: "informed me that he was not in a position to get them (the box company).    He said there was an arrangement between Thorpe and the box company whereby he couldn't lease it."    Peton testified that in the conversation testified to by Triggs he told Triggs: "that I couldn't work with another agent in the field, because they (the box company) had obligated themselves in some way to Thorpe."

Rapp testified that after he had cleared up his insurance matters he asked Thorpe's representative if he had any premises to offer him, that said representative presented several places, among them the premises in question; that at Rapp's request said representative took him to said premises; that he had never been there before; that he had not known anything about said premises before they were so presented to him by Thorpe's representative. Thorpe was given by the defendant authority to procure a tenant for said premises a day or two after the fire. It was two weeks or longer after the time that Rapp went to see the premises before an agreement was reached and the lease executed. During all of that time negotiations were in progress between Rapp and defendant, which were conducted by Thorpe. Thorpe submitted defendant's propositions to Rapp and Rapp's propositions to defendant. Rapp told defendant that Thorpe first presented the building to him and that: ''Thorpe would have to get the place for him.'' Rapp was under no obligations to the plaintiffs to become their customer, nor to enter into negotiations with them about a lease, he refused to become their customer, or to enter into negotiations with them in respect to a lease, and it cannot be held that he was ever their customer, or in negotiation with them in respect to a lease. Although plaintiffs first presented Rapp to the defendant as a possible tenant, defendant had the right to employ Thorpe to secure Rapp as a tenant.

''A broker, unless wrongfully prevented by his principal, must bring about an agreement in order to be entitled to his commission, and the principal may employ several brokers to sell the same property, and may sell to the buyer who is first procured by any of them, without being called upon to decide which of the brokers was the primary cause of the sale provided he remains neutral between them and is not guilty of any wrong.'' Day v. Porter, 161 Ill. 235, 237

Plaintiffs did not bring about the agreement for a lease. That agreement was brought about by Thorpe. If the judgment can be sustained, it must be sustained on the ground that defendant did not remain neutral, but was guilty of some wrong towards plaintiffs, of some act or omission which tended to hinder or prevent plaintiffs from securing Rapp as a tenant of the defendant. There is in the record no evidence tending to show that defendant did not remain neutral as between plaintiffs and Thorpe. Defendant gave plaintiffs a reasonable time to secure Rapp as a tenant. It was not until two weeks or longer after plaintiffs, through Peton, informed the defendant that they could do nothing with Rapp; that they could not secure him as a tenant, that defendant availed itself of the services and efforts of Thorpe and through him, as their broker, leased the premises to Rapp. When plaintiffs informed the defendant that they could not secure Rapp as a tenant the defendant was not bound to wait longer. The failure of plaintiffs to secure Rapp as a tenant for the defendant was not through any fault, any act or omission, of the defendant, and the plaintiffs therefore failed to prove their claim for commissions from the defendant.

The judgment of the Municipal Court will be reversed with a finding of facts and judgment will be entered here for the defendant.

*Reversed and judgment here for the defendant.*