## William E. Murawska, Appellant, v. William F. Boeger, Appellee.

## Gen. No. 25,185.

1. BROKERS, § 40*—*when broker is not entitled to compensation.* In an action to recover a broker's commission for the sale of real estate, *held* that in order to be entitled to a commission, the broker was bound to produce one who was ready, willing and financially able to make the purchase on the terms named by the owner of the property, and that he was not entitled to claim his commission by virtue of a contract between the owner and a third person, where it appeared that the broker had introduced such third person to the owner, that such third person had entered into an option contract with the owner, whereby he might buy in the property, or act as agent in securing a purchaser, who could and would consummate the transaction; and that said third person was instrumental in finding such purchaser to whom the property was subsequently sold, but on terms which varied materially from those originally submitted to the broker.

2. BROKERS, § 34*—*what is essential to entitle broker to commission.* Commissions for procuring a purchaser of real estate cannot be recovered where plaintiff is not the efficient and procuring cause of the sale as it is finally consummated.

3. BROKERS, § 34*—*when sale is not effected by broker.* In an action to recover a broker's commission for the sale of real estate, held that a broker cannot recover a commission from the owner of real estate where said property was subsequently sold to a person under a contract with which the broker had no direct or proximate connection, where it appeared that said purchaser was introduced to the owner by a third person, whom the plaintiff broker had introduced to the owner; that such purchaser had been introduced to said third person by a second broker; and that said purchaser and second broker had no knowledge of the plaintiff broker.

4. BROKERS, § 34*—*what is proximate cause of act.* The proximate cause of an act is that which produces it without the interposition of an independent agency, which is not the probable result of the first cause. It is the proximate cause of which the law takes notice and not the *causa causarum.*

5. BROKERS, § 34*—*when sale of property is not effected by broker.* In an action to recover a broker's commission for the sale

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CCXIX 16

of real estate, *held* that a broker cannot recover on a contract with the owner of real estate where the property in question is subsequently sold under an agreement, different in many respects from the one under which he testified he was employed to perform, where it appeared that the broker was to receive a commission of 10 per cent if he secured the sale of the property in question at a price of $295,000, and that the person who finally agreed to take title had not been introduced by the broker to the owner and had agreed to pay $280,500.

6. BROKERS, § 42*—*what is effect of sale under different terms as to broker's compensation.* Commission for procuring a purchaser for real estate cannot be recovered where the contract finally consummated is different from the one plaintiff was employed to accomplish.

TAYLOR, P. J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed October 6, 1920. Rehearing denied October 19, 1920.

RICE, LOWES & O'NEIL, for appellant; FRANCIS M. LOWES, of counsel.

CHARLES M. HAFT, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

This action was brought by the plaintiff, Murawska, against the defendant, Boeger, to recover a commission which the plaintiff claimed was due him on the sale of a cemetery known as the Oak Ridge Cemetery of Chicago. The cemetery was owned by a corporation, all the stock of which was owned by the defendant, his father and other members of the family. The down-town office of the cemetery company was in the National Life Building in Chicago. One Kirmse occupied an office with the cemetery company. The plaintiff, who was Kirmse's son-in-law, was frequently in the offices to see him and on one occasion,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

while the plaintiff was there, the defendant asked him if he wanted to make some money, and in that connection he told him that the cemetery was for sale and suggested that he find a purchaser, in which case there "would be a good piece of money in it" for him. Shortly thereafter the plaintiff found one Reynolds, who said he was interested in buying the cemetery, and he subsequently introduced Reynolds to the defendant. The defendant told the plaintiff that the price of the cemetery had been fixed at $295,000. Reynolds had some negotiations with the defendant. He testified that he was wholly unable to make the purchase himself and he entered into the negotiations without any thought of doing so but with the idea of securing an option on the cemetery by means of a small payment and thereafter finding a purchaser. The outcome of the negotiations between Reynolds and the defendant was the execution of an option contract which recited the payment of $2,000 in cash by Reynolds. He testified, however, that the payment consisted of securities. Under the contract, Reynolds was given an option to buy the capital stock of the cemetery company and certain land adjoining the cemetery for $295,000, $2,000 in cash, $50,000 on January 1, 1918, and the balance in semiannual payments of $12,500 each. Under the terms of this contract the option was to become an agreement of sale and purchase and the stock was to be deposited in escrow, and the land referred to was to be conveyed to the cemetery company by the then owners, when the $50,000 payment was made, and also it was provided that payments made were to be forfeited if the succeeding payments were not made as agreed. The plaintiff testified that the defendant agreed to pay him a commission of 10 per cent and Reynolds testified that in defendant's presence the plaintiff told him that their arrangement was that he was to have a 10 per cent commission. Reynolds further testified

that he and the plaintiff had an agreement whereby the plaintiff was to share his commission with him,— an arrangement of which the defendant had knowledge.

After Reynolds had signed his contract with the Boeger family, the plaintiff demanded payment of his commission of the defendant but the latter said that he could not afford to pay a commission of $29,500 on a contract under which only $2,000 had been paid. He offered to pay the plaintiff $200, which the latter declined, saying that he wanted his full commission whenever the contract was "closed up," whereupon, the plaintiff testified, the defendant assured him that when the deal was closed up he would get his money. Later on the plaintiff again went to the defendant, saying that he understood that the sale of the cemetery had been consummated and demanded his commission, whereupon the defendant told him that he owed him no commission as the cemetery had been sold to one Anderson and not to Reynolds.

It was shown by the testimony of Reynolds, that after he closed his option contract with the Boeger family, he made an arrangement with the cemetery company whereby he became its sales manager and he then moved into the cemetery offices and went to work promoting the sale of cemetery lots. Anderson also testified for the plaintiff to the effect that he never met the plaintiff until some time after he purchased this cemetery; that he was introduced to Reynolds by one Stewart, a real estate broker, and that through Reynolds he met the defendant and as a result of that meeting he entered into negotiations for the purchase of the cemetery, which were finally consummated. The contract which Anderson entered into with the Boegers was for the purchase of the stock of the cemetery company and the land referred to and also all real and personal property of the cemetery company, for the sum of $280,500. It provided

that $168,000 was to be paid in cash, and two tracts
of land in Kane county, Illinois, were to be conveyed
by Anderson on a valuation of $100,000; and he was
to transfer to the Boegers $25,000 worth of stock in
a new cemetery corporation to be formed by him.   It
was provided in the contract that if Anderson found
a bona fide purchaser for the Kane county farms
within a year, at a price of $112,500, he should have
the option to buy the farms back at that figure, and
in that event, upon payment of $12,500 with interest
at 5 per cent from the date of the contract, the 25,000
shares of stock of the new company, above referred
to, should be assigned to Anderson.   The Reynolds
option contract was dated September 5, 1916, and
was a contract between the Boegers, as parties of the
first part, and Reynolds as party of the second part.
The Anderson contract was dated February 10, 1917,
and was a contract between the cemetery company,
party of the first part, the Boegers, individually, as
parties of the second part and Anderson as party of
the third part.

Before the execution of the Anderson contract,
namely, on January 20, 1917, Anderson and Reynolds
executed an agreement in writing wherein it was re-
cited that whereas Reynolds had an interest in the
option contract with the owners of the stock of the
cemetery company and desired to turn over to Ander-
son any interest he might have in that contract for
the purpose of enabling Anderson to deal direct with
the stockholders of the cemetery for the purchase of
its assets, therefore it was agreed that when Ander-
son should have finally consummated this purchase
he would pay Reynolds $5,000, and transfer to him
2,500 shares of the stock of the new company; and
further it was agreed that Reynolds would be ap-
pointed manager of the new company for a period of
one year at a stipulated salary and also that he should
be elected a director and vice president of the com-

pany. This contract did not include any agreement on the part of Reynolds to assign any interest to Anderson which he might have under the option contract, nor did it contain any such assignment, and no such assignment was ever made. After the execution of the contract between Anderson, the Boegers and the cemetery company, namely, on March 15, 1917, Reynolds executed an agreement whereby he released the Boegers from any and all obligations or claims growing out of his previous contract with them.

These facts were all brought out by the plaintiff's witnesses, consisting of Reynolds and Anderson in addition to himself. The suit was originally brought against all of the Boegers but at the close of the plaintiff's case it was dismissed as to all of them except the appellee, to whom we have referred as the defendant. At the close of the plaintiff's case the court allowed the defendant's motion to instruct the jury to return a verdict in his favor and upon such verdict judgment was duly entered, from which the plaintiff has perfected this appeal.

In our opinion the action of the trial court in granting the defendant's motion for a peremptory instruction was proper. Under the arrangement which the plaintiff claimed he had with the defendant he was to receive the commission referred to in case he found a purchaser of the cemetery at the price of $295,000. It is clearly demonstrated by the evidence that the plaintiff never found such a purchaser. He could not claim his commission by virtue of the contract between the Boegers and Reynolds. To entitle him to a commission, the plaintiff was bound to produce one who was ready, willing and financially able to make the purchase on the terms named by the defendant. *Marcy v. Whallon*, 115 Ill. App. 437. He could not claim a commission under his arrangement with the defendant, upon producing Reynolds, who merely entered into an option contract whereby he might

purchase if he chose or, on the other hand, if he preferred, he might forfeit his initial payment and elect not to exercise his option. *Lawrence v. Rhodes,* 188 Ill. 96.

The plaintiff cannot recover a commission from the defendant on the basis of the Anderson contract for it was not made by the plaintiff and it is clear from the evidence that he was not the efficient and procuring cause of the deal between the Boegers and Anderson as it was finally consummated. *West End Dry Goods Store v. Maun,* 133 Ill. App. 544. The only thing the plaintiff did was to find Reynolds, who contracted for the option with the Boegers. Thereafter, another broker, Stewart, with whom it was not shown that the plaintiff had any connection, introduced Anderson, who says he knew nothing whatever of the plaintiff, to Reynolds and through Reynolds, Anderson was introduced to the Boegers. Under such a situation it is clear that the plaintiff was not the proximate cause of the consummation of the Anderson contract. The proximate cause of an act is that which produced it without the interposition of an independent agency not the probable result of the first cause. *Baumgartel v. Hoyne,* 54 Ill. App. 497. It can make no difference that it may be said that the plaintiff, in bringing Reynolds into contact with the defendant, furnished a cause which ultimately resulted in Anderson getting into touch with the defendant through Reynolds, by means of Stewart, which may be said to be the proximate cause of the ultimate sale of the property. As was said in the latter case: "It is the proximate cause of which the law takes notice and not the *causa causarum.*" It was neither the plaintiff nor Reynolds that brought Anderson into this deal but Stewart, who had no connection with the plaintiff. If it had not been for Stewart, the sale to Anderson would never have been consummated. It can make no difference that Anderson,

through his broker Stewart, approached the defendant through Reynolds, rather than directly. A case very similar to the one at bar is *Peek v. Slifer,* 122 Ill. App. 21, where it was held that the plaintiff could not recover the commission claimed.

A further reason why the plaintiff cannot recover in this case is to be found in the fact that the contract finally consummated with Anderson was different in many respects from the one which he testifies he was employed to accomplish. According to the plaintiff's testimony he was to receive a commission of 10 per cent if he accomplished the sale of the property in question at a price of $295,000. The contract with Reynolds was not a sale contract but an option contract and, furthermore, it was never consummated. The Anderson contract was one involving the exchange of land on a valuation of $280,500. In this respect the facts involved were similar to those involved in *Tooker v. Duckworth,* 107 Mo. App. 231, where it was held that the plaintiff could not recover the commission for which he brought suit.

We have carefully examined *Henry v. Stewart,* 185 Ill. 448, and other cases to which the defendant has called our attention, but in our opinion they are not in point. In *Henry v. Stewart, supra,* the sale of the property involved was made by the defendant directly to the party who was introduced to the defendant by the plaintiff, and it was held to be immaterial that such party was acting for others. That, of course, is not the situation in the case at bar. It is of course true, as held in some of the cases to which the defendant has called our attention, that it is not necessary that the purchaser be actually introduced to the owner by the broker, provided it affirmatively appears that the purchaser was induced to apply to the owner, through the instrumentality of the broker or through means employed by him. *Carter v. Webster,* 79 Ill. 435; *Hafner v. Herron,* 165 Ill. 242. That

proposition also was not involved here.

For the reasons stated the judgment of the superior court is affirmed.

*Affirmed.*

O'CONNOR, J., concurs.

TAYLOR, P. J., dissenting.

MR. PRESIDING JUSTICE TAYLOR, dissenting: Anderson testified that he was introduced to the defendant, Boeger, by Reynolds and that before that time he knew practically nothing of the Oak Ridge Cemetery; from which it follows that all that took place subsequent to his meeting Reynolds was the result of the plaintiff having gotten Reynolds to take an option contract on the property in question. Everything that was done through Reynolds by Anderson may be said to have been done as the result of the complainant's services in producing Reynolds and having the option contract obtained from the defendant. Anderson knew nothing of the matter save what he got through Reynolds, and Reynolds as a prospective purchaser was a creation of the complainant. The fact that Anderson was introduced to Reynolds by one Stewart is immaterial and entirely irrelevant. If Stewart had introduced Anderson to Boeger and at that time Boeger had the right to sell the property it would be an entirely different situation, but as the option was outstanding and owned by Reynolds, and Anderson first became connected with the matter through Reynolds, it is obvious that whatever transpired thereafter was fundamentally dependent upon the services of the plaintiff in producing Reynolds. Without Reynolds, Anderson never would have come in contact with the defendant and as everything that was done through Reynolds was the same as though it were done through the plaintiff, it is quite obvious that the services of the plaintiff were the actual cause of the ultimate sale to Anderson. If the services of the plaintiff and Reynolds are stricken out there is

a hiatus. Anderson would not even have known Boeger.

The contract of January 20, 1917, between Anderson and Reynolds, which was made prior to the contract between Anderson and the defendant, shows that Anderson received from Reynolds the option right without which he could not have purchased the property from the defendant. As, therefore, the actual, ultimate sale of the property was based in its inception, as far as Anderson and Boeger were concerned, upon the option given by the defendant to Reynolds as a result of the services of the plaintiff—and as a practical matter was the ripening of Reynolds' option into a sale—it follows that in the eyes of the law the plaintiff must be considered the moving, procuring cause of the sale, and entitled to a commission. Strong evidence that the Reynolds' option was basic is the fact that the very $2,000 he paid down when he got it was credited on the ultimate purchase price.

Believing that the evidence overwhelmingly demonstrates that Reynolds, the creature of the plaintiff, was the conduit through which Anderson did reach, and could only reach, the defendant in order that the sale might take place, I am constrained to dissent.

That the terms of the sale were changed somewhat from what they were as expressed in the option contract, of course, was immaterial. *Henry v. Stewart,* 185 Ill. 448.