John H. HENNESSY, Jr., as an Individual and d/b/a Business Systems and Service Company, a Proprietorship, Plaintiff-Appellant,

v.

Otis A. SCHMIDT, Defendant-Appellee.

No. 74–2079.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1975.

Decided Aug. 22, 1975.

---

6. No question is raised on appeal concerning the applicability of the Eleventh Amendment to this case.

William M. Freivogel, Michael J. Critelli, Chicago, Ill., for plaintiff-appellant.

Lloyd P. Douglas, Edward J. Kelly, Chicago, Ill., for defendant-appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and EAST *, Senior District Judge.

EAST, Senior District Judge.

In the District Court proceedings, the plaintiff John H. Hennessy, Jr., doing business as Business Systems and Service Company (hereinafter Hennessy) sought to recover from the defendant Otis A. Schmidt (hereinafter Schmidt) the sum of $25,000 damages upon an alleged breach of a sales commission contract for obtaining a sale of corporate stock owned by Schmidt. Following a trial without a jury, the District Court found adversely to Hennessy and entered a judgment for Schmidt.

Hennessy appeals and we reverse.

## THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

We recite the pertinent parts of the findings of fact for the factual background of the parties and the cause and the conclusions of law to facilitate our course of disposition on appeal:

*Findings:*

"3. Schmidt and Al Ruck ('Ruck') [were] the principal owners of the common stock of S & R Industries, Inc.

"4. In 1970, for reasons not material to this action and not fully developed at the trial, Schmidt was voted out of operating control and thus sought to sell his interest in S & R Industries.

"5. By virtue of letters exchanged on June 22, 24, 26, and July 22, 1970, Schmidt and Hennessy entered an agreement whereby Hennessy would receive a specific commission [of five percent of the purchase price] if he produced a buyer of Schmidt's stock in S & R Industries at a suitable price.

"6. This agreement was not an exclusive arrangement wherein Hennessy would receive compensation no matter who was the proximate cause of the sale.

"7. At the time Schmidt and Hennessy made the agreement a lawsuit was pending in the Illinois State court. The parties to the lawsuit [involving the operation of S & R Industries] were Schmidt and Ruck. This suit was initiated in December of 1970.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

"8. Pursuant to the agreement Hennessy performed a number of services in the form of telephone calls and letters in an attempt to sell Schmidt's shares of S & R Industries.

"9. By the end of January, 1971, no buyer could be found for Schmidt's stock. From that point on Hennessy directed his attention to negotiating a purchase by Ruck and arranging for financing through Central National Bank.

"10. Hennessy performed his services with the approval of Schmidt as demonstrated by Schmidt's letter to Hennessy on October 8, 1971."

"13. Hennessy did not assist in the preparation of the final papers that made up the settlement agreement and the sale of the shares, nor did he attend the closing.

"14. Schmidt's attorney, Edward Kelly, [Kelly] negotiated with Ruck and the corporation regarding the settlement of the lawsuit by the purchase of Schmidt's shares."

We find record evidence supporting each of the above specific findings. We do note, however, that the substance of finding 13 is literally correct in that Hennessy did not physically assist (as a scrivener) in the preparation of the final papers that made up the settlement agreement and the sale of the shares and that he did not physically attend the closing session. Also, we note that the literal reading of finding of fact 14 is correct only to the extent of Kelly's participation in the negotiations for Ruck's purchase of Schmidt's shares, and is clearly erroneous to the extent the finding might negate Hennessy's negotiations for Ruck's purchase of Schmidt's shares.

The District Court, under the label of findings of fact, further found:

"11. Schmidt's stock was sold to Ruck as a direct result of the settlement reached by Ruck and Schmidt in the lawsuit which was filed in state court.

"12. Hennessy never participated in the negotiations nor did he procure the agreement that entered the state court litigation."

We deem those two "findings" to be mere conclusionary results rather than specific facts, and without the effect of an established ultimate fact reached from a consideration of contradictory evidence or different inferences reasonably drawn or inferred.

*Conclusions*:

"2. The substantive law of the State of Illinois shall be applied in this case.

"3. In a suit by a broker for a commission, he must normally prove, by a preponderance of the evidence, that he procured a purchaser ready, willing and able to purchase on the seller's terms. Or, that the sale was the proximate result of the broker's efforts, or that he was the procuring cause of the sale. *Waghorne v. Hogstrom,* 11 Ill. App.2d 345, 137 N.E.2d 497 (1956) (an unpublished full opinion); *Camp v. Hollis,* 332 Ill.App. 60, 74 N.E.2d 31 (1947); *Klyczek v. Dubuque Fire and Marine Insurance Company,* 325 Ill. App. 696, 60 N.E.2d 648 (1945) (abst.); *Murawska v. Boeger,* 219 Ill.App. 241 (1920).

"4. A broker is not deemed to be the procuring cause merely because he may have influenced the purchase to some extent. Rather, he must be the one who effects the sale or through whose efforts the sale is brought about. *Waghorne v. Hogstrom, supra; White v. Sellmyer,* 157 Ill.App. 435 (1910); *Commercial National Bank v. Hawkins,* 35 Ill.App. 463 (1889).

"5. In this case there is no doubt that the parties entered into a legally binding contract. However, it is undisputed that it was not of an exclusive nature. Thus, Schmidt was free to negotiate a sale with other parties. *Friend v. Charles W. Triggs Co.,* 147 Ill.App. 427 (1909); *Chicago Title and Trust Co. v. Guild,* 323 Ill.App. 608, 56 N.E.2d 659 (1944).

"6. Although plaintiff contended that he engaged in correspondence of over 30 letters, made in excess of 50 telephone calls, assisted in arranging bank financing, made an analysis of bookkeeping deficiencies, etc., no evidence was presented which conclusively showed the plaintiff's activities were the proximate cause of the sale.

"7. . . . In order to be successful on the merit of this claim for a 5% commission, plaintiff had to demonstrate performance of all the conditions. As a condition precedent to the payment of the commission the plaintiff's efforts had to be the proximate cause of the sale. . . .

"8. The defendant was not liable to the plaintiff for services rendered pursuant to the aforementioned agreement. . . ."

## DISCUSSION

At the outset, it is manifest from a reading of the conclusion of law numbered 6 that the District Court ignored the proper and valid rule or test for viewing and weighing Hennessy's evidence and making findings of fact in accordance with the "preponderance of the evidence" as recited in conclusion of law numbered 3, and erroneously viewed and weighed Hennessy's evidence and made its finding of fact under the non-applicable stricter rule or test of conclusive proof. The District Court by applying the stricter improper conclusive proof rule or test in this case placed a higher burden of proof upon Hennessy than is lawfully required. See *Hurzon v. Schmitz*, 262 Ill.App. 337 (1931); also 32A C.J.S. Evidence § 1020 (1964) at 641–43. We are satisfied that the District Court in applying the conclusive proof rule or test foreclosed itself from making further findings upon facts under Hennessy's evidence which the court may have found to be proven under the preponderance of the evidence rule or test. For example, specific findings of fact of the full extent and effect, if any, in causing or procuring Ruck's purchase of Schmidt's stock through Hennessy's efforts expended "in correspondence of over 30 letters, [making] in excess of 50 telephone calls, assisted in arranging bank financing, [making] an analysis of bookkeeping deficiencies, etc." These factors were not specifically dealt with and were lumped by the District Court in conclusion of law No. 6. There is among the items of "correspondence" in Hennessy's efforts to revive negotiations between Ruck and Schmidt Hennessy's proposed letter to Ruck of Schmidt's willingness to seriously consider any fair offer for the shares from Ruck (Plaintiff's Exhibit 13) which was turned over to Kelly and Kelly's redrafted letter or Schmidt's willingness to deal addressed and finally transmitted to Ruck (Plaintiff's Exhibit 14). The letter may well have been the catalyst of the ultimate purchase by Ruck. The Kelly letter (Plaintiff's Exhibit 14) is on its face a plagiarism of Hennessy's proposal (Plaintiff's Exhibit 13); yet it and the follow-up letters of Hennessy to Ruck were not specifically dealt with in the District Court's findings.

## CONCLUSION

We conclude that the findings of fact as found by the District Court under the improper rule or test of conclusive proof are tainted and unlawfully made. It follows that without properly determined findings, the conclusions of law, together with the judgment for Ruck predicated thereon, collapse and must be vacated and the case remanded for reconsideration.

In view of the apparent importance the District Court placed upon the lack of Hennessy's assistance in the preparation of final papers and appearance at the closing session of the sale-purchase of stock transaction, we further conclude that the District Court erred in adopting, under the authorities relied upon, the classical real estate broker's test of performance in determining the proximate cause or procurement of the sale of Schmidt's corporate stock to Ruck.

*Waghorne* involved the sale of residential real estate; *Camp* was concerned with the sale of the Palmer House hotel; *Klyczek,* a land sale; *Murawska,* a coal yard; and *Commercial Bank,* a sale of land. Suffice to say, the role of the real estate broker has traditionally been the guiding hand throughout the transaction, including the preparation, either personal or through legal counsel, execution and delivery of the instruments of transfer, either manually or through escrow.

Hennessy's role in the instant transaction is readily distinguishable from that of the conventional real estate broker. In the first instance, Hennessy's mission was to find a purchaser of Schmidt's shares by a sale of all the capital stock of the S & R Industries. The principal stockholders, Schmidt and Ruck, were at irrevocable loggerheads and embroiled in a lawsuit. There was no prospective purchaser in such a picture until Hennessy revived the parties' interest in Schmidt's prior offer to sell his shares to Ruck by his proposed letter to Ruck and his subsequent innovative suggestion proposing the use of a common basis for measuring the value of the stock, book value, and the suggestion of the $500,000 purchase price with corporate income tax advantage to Ruck. Interestingly enough, coincidental or procurement by Hennessy, that price became the ultimate sales price.

■ Also there is some evidence in the record by which Hennessy claims to prove that he was excluded by Kelly from attending the final sessions of the closing of the sale-purchase transaction of Schmidt's shares. Hennessy is entitled to have the evidence in the case weighed and determined under an appropriate standard and test. We are satisfied that a more appropriate test to be applied in the reconsideration of whether Hennessy's performance was the proximate cause or procurement of the sale of Schmidt's shares to Ruck is the finder's or business opportunity broker's fee test as delineated in *Modern Tackle Co. v. Bradley Industries,* 11 Ill.App.3d 502, 297 N.E.2d 688 (1st Dist. 1973). *See also*

*Diversification Consultants, Inc. v. Candy-Gram, Inc.,* 130 Ill.App.2d 1029, 264 N.E.2d 788 (1st Dist. 1970); *Schaller v. Litton Industries Inc.,* 307 F.Supp. 126 (E.D.Wis.1969); and *Chiagouris v. Continental Trailways,* 50 Ill.App.2d 196, 200 N.E. 399 (1st Dist. 1964).

Accordingly the District Court's findings of fact and its conclusions of law, as a whole, together with the judgment based thereon, are each vacated and the cause remanded to the District Court for further proceedings consistent herewith.

Judgment vacated and remanded.